# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 14, 2012 Session

## SHANDRA KAY HATTAWAY v. KEVIN TODD HATTAWAY

**Appeal from the Circuit Court for Sumner County**
**No. 2010CV464    C.L. Rogers, Judge**

---

**No. M2011-01165-COA-R3-CV - Filed May 16, 2012**

---

In this divorce appeal, Husband challenges the trial court's division of marital property, alimony award, permanent parenting plan, award of discretionary costs, and award of attorney fees to Wife. We have determined that the trial court erred in requiring Husband to pay more rehabilitative alimony than he can afford, in awarding him only 28 days a year in parenting time, and in awarding discretionary costs for expert fees for case preparation. In all other respects, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, Vacated in Part and Remanded in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Martin Stephen Sir and April Nicole Watkins, Nashville, Tennessee, for the appellant, Kevin Todd Hattaway.

Charles R. Bobbitt, Jr., Hendersonville, Tennessee, for the appellee, Shandra Kay Hattaway.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Shandra Kay Hattaway ("Wife") and Kevin Todd Hattaway ("Husband") married in December 1991 and have two children. Wife worked as a hair stylist to support the family while Husband attended medical school. About a year after the birth of their first child in 1994, Wife stopped working outside the home, although she continued to do some hair styling at the home. In approximately 1996, Husband entered the workforce as a family practitioner.

In 1999, Husband was ordered to pay child support for a child he fathered out of wedlock during the parties' marriage.

Husband started his own family medical practice in Hendersonville, Tennessee, in 2000. Frustrated with what he considered inadequate income, Husband began looking for other employment options in Colorado in 2009. He found employment as a doctor with the military and moved to Colorado in 2010.

Wife filed this action for divorce in April 2010 citing irreconcilable differences and inappropriate marital conduct; she later added grounds of adultery. Husband filed an answer and counterclaim. In June 2010, the court awarded Wife temporary support in the amount of $1,000 per month. In October 2010, the court granted Husband's motion for parenting time and ordered that he have parenting time every other weekend. In November 2010, the court approved Husband's proposed sale of his medical practice in Hendersonville for $11,414.00. The court further ordered that the proceeds of the medical practice sale and the proceeds from a sale of silver be deposited with the court clerk for later division.

In response to a contempt petition filed by Wife, the court entered an order in February 2011 requiring Husband to continue maintaining the household expenses as previously ordered and directing the court clerk to disburse to Wife $6,565 of the escrowed funds to cover household marital expenses and attorney fees Husband had failed to pay as ordered. At a March 2011 hearing, the court found that Husband had paid the expenses as ordered and reiumbursed the clerk's office.

*The hearing*

The matter was tried on April 5, 2011. The court heard testimony from both parties. Wife stated that she graduated from high school and worked as a hairdresser until December of 1995. She estimated that she earned approximately $12,000 in 1995. According to Wife, she stopped working outside the home in 1995 because Husband wanted her to stay home with their child. Once Husband entered the workforce, they relied entirely on his income to support themselves.

Wife testified that Husband moved out of the marital home without warning or explanation in June 2010. She wanted a divorce because of Husband's multiple affairs with other women.

At the time of the hearing, the parties' two daughters were 14 and almost 17 years old. Wife requested that she be named primary residential parent. She testified that, after he moved out on June 1, 2010, and before he moved to Colorado, Husband saw the children

about 20 times; Wife stated that she allowed Husband to visit with the children whenever he requested to do so unless the older daughter was working. She stated that most of the visits were an hour to an hour and a half in length with the exception of about two overnight visits. Wife testified that, after the court awarded Husband parenting time every other weekend, Husband exercised his parenting time on two or three weekends. After he moved to Denver, he had seen the girls only once, the weekend before the hearing. Wife wanted Husband to see the children but preferred to arrange visits by agreement because of previous instances when he failed to appear for parenting time.

Asked about Husband's request to have the girls live with him each summer, Wife responded that they had gone to church camp every summer and had been on several mission trips. She stated that the girls wanted to go on a mission trip to Panama together that summer. Moreover, the older daughter had a job.

Since the end of August 2010, Wife had been working at the YMCA child care program 25 to 30 hours a week. For the first three months, her gross earnings totaled $2,077.35. This job allowed Wife and the children to operate with one vehicle since Wife could walk to work.

Wife testified as to why she had gotten a W-2 from Husband's medical practice for a couple of years. According to Wife, she did not actually perform a job at Husband's medical practice; at his request, she came into the office for an hour or two in the morning after dropping the kids off at school because he was trying to manipulate his income "so he wouldn't have to pay as much child support for the child in Kentucky."

As to her employment plans, Wife testified that she was pursuing a radiology degree, which she anticipated would afford her an income of about $30,000 a year. Wife was having to do some remedial classes before she could complete her basic curriculum; then she could start on the two-year program to get her radiology technology certificate. Wife estimated that the entire process would take about five years. During that time, she planned to continue her YMCA job.

Husband denied that he had asked Wife to work at his office to reduce his child support obligation. He stated that Wife worked at his office after he disclosed his affair to her in 1999, and their marriage counselor advised them that he needed to be accountable to her at all times. According to Husband, Wife was the office manager; she would go to the bank, purchase office supplies, and act as a liaison between him and the staff. She used their Suburban to perform these duties. After Husband replaced the Suburban with a minivan in early 2009, Wife quit. At that point, Husband testified that he increased his own income by the amount he had been paying Wife.

Husband opined that Wife could at least work full time at minimum wage. He expressed doubts about her ability to complete the radiology program due to her learning problems.

As to his move to Colorado, Husband testified that he did not move for money reasons as the compensation in Colorado was comparable to Tennessee, but the military job offered a more stable income and set hours with no call responsibilities, which would allow him to have more time with his daughters. Husband also found the job less stressful than private practice. Husband stated that he had discussed employment opportunities in Colorado with Wife, but she resisted the idea of moving there and refused to go with him for a second interview.

Husband disagreed with Wife's description of problems with his parenting time. He stated that when there was no parenting plan, he had trouble communicating with Wife. He wanted to have the girls stay with him all summer.

Husband testified that excessive spending had been a topic for which they received counseling. According to him, Wife refused to complete the counseling.

On cross-examination, Husband stated that, between June 2010 and December 2010, he saw the children only when Wife allowed him to do so since there was no parenting plan. He estimated that he saw them five or six times during that period, two of the visits being overnight. Husband claimed that Wife had denied him parenting time, but he elected not to push the issue until he asked the court for specific parenting time. According to Husband, when he had parenting time every other weekend, he followed the schedule except when his car broke down and the visit was rescheduled. He testified that since moving to Colorado in December 2010, he had not seen his children until the weekend before the hearing, when he had lunch with them and took them shopping.

*Trial court's decision*

The court filed a memorandum opinion on April 18, 2011, regarding property/debt allocation and rehabilitative alimony. (The opinion will be discussed more fully below as relevant to the issues on appeal.) The court entered a final decree of divorce on May 5, 2011, in which it found Husband to be at fault and awarded Wife a divorce on grounds of inappropriate marital conduct and adultery. In dividing the marital estate, the court awarded the marital home and all of the related debts to Husband and awarded Wife $15,222.50 for her half of the equity in the marital home. Wife was also awarded all of the monies on deposit with the court clerk, totaling $20,519. The court ordered Husband to pay all of the marital debts except the debt on the Honda van awarded to Wife. Wife was awarded

rehabilitative alimony in the amount of $1,700 a month for 96 months with the specification that this alimony would remain in the court's jurisdiction and was not to be considered alimony in solido. Husband was also required to maintain COBRA health insurance on Wife for up to 36 months. The court ordered Husband to pay Wife $17,000 for attorney fees. In the parenting plan adopted by the court, Husband had parenting time only 28 days a year.

In an order filed on May 31, 2011, the court awarded Wife discretionary costs in the amount of $2,019.

ANALYSIS

On appeal, Husband assigns error to the trial court's decisions with respect to the division of marital property, the award of spousal support, the allocation of parenting time, the award of attorney fees, and the award of discretionary costs.

*Division of marital property*

The trial court divided the marital property as follows: Husband received the marital home and all of the related debt, and Wife received a lien for one-half of the value of the equity in the home. Thus, each party effectively received $15,222.50, half of the equity. Wife also received all of the funds on deposit with the court clerk, $20,519, and a van with a net value of $13,048. The total net value of the assets received by Wife is approximately $48,790. In addition to his share of the house, Husband received $3,100 from a credit union account, a Jaguar with a net value of $8,250, a motorcycle with a net value of $1,500, and a projected tax refund of $4,400; these assets have a total net value of approximately $32,473. The court valued the household furnishings at $7,000 and stated that the disposition of these assets "has been agreed to." Husband was also ordered to be responsible for over $100,000 in marital debts, including a debt owed to the Internal Revenue Service, medical school loans, medical practice debts, and credit card debt found by the court to have been incurred by Husband.

Husband's first argument is that the trial court erred in its valuation of the household furnishings and the division of those assets. With respect to the distribution of the household furnishings, the trial court stated that this disposition was by agreement.[1] Therefore, Husband cannot now request a different distribution of the household furnishings.

---

[1]When Husband left the marital home, he took some household items with him. At the hearing, he informed the court that he did not want any of the furniture.

The valuation of a marital asset is a question of fact. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). Each party bears the burden of producing competent evidence regarding the value of a marital asset. *Id.*; *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). If the evidence of value is conflicting, the trial court has discretion to assign a value that is within the range of values supported by the evidence. *Kinard*, 986 S.W.2d at 231. A trial court's valuation of a marital asset will not be overturned unless the evidence preponderates against those findings. *Id.* In his interrogatory responses, Husband did not give a value for any of the listed household items. At the hearing, he estimated their value at about $12,500, whereas Wife gave an estimated value of $2,000 for everything Husband left behind. The court's valuation of $7,000 is within the range of values presented, and we find no error here.

Husband goes on to argue that the court erred in its division of the marital assets by giving Wife the entirety of the funds on deposit with the court clerk.

A trial court has a great deal of discretion in determining the manner in which it divides marital property, and an appellate court will generally defer to a trial court's decision unless that decision is inconsistent with the factors set out in Tenn. Code Ann. § 36-4-121(c) or the evidence preponderates against the decision. *Jolly v. Jolly,* 130 S.W.3d 783, 785-86 (Tenn. 2004). An equitable distribution is not necessarily an equal one. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).

Tenn. Code Ann. § 36-4-121(c) instructs the court to consider all relevant factors in making an equitable division of marital property, including the following:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage

earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

While we are not unsympathetic to Husband's argument that he should have received the proceeds from the sale of his medical practice (approximately $15,000) in order to pay down the remaining debts of the practice, we emphasize the following pertinent findings by the trial court in its memorandum opinion:

Wife is 44, dyslexic affecting her reading and writing, high school education, no work history of significance, no special employment skills, performing as full time homemaker and primary parent of the two daughters for the last 16 years. Wife worked to allow Husband to complete medical school in the early years of the marriage. . . . Husband age 41, is a licensed medical doctor. Husband operated a successful private practice in Sumner County, Tennessee before suddenly leaving the family, selling his medical practice and moving to Colorado. No substantial marital assets exist. Husband was in charge of management of marital funds. Wife was not allowed to be involved. The Wife has no ability to replace assets, expect anything other than low wage earnings and will be the primary parent for the two daughters for the next 5 years until the last child graduates. There is extreme disparity between the parties earning capacity and ability. Husband currently earns $121,000.00 annually, as beginning salary at his new job. The Husband has unlimited ability to replace assets, earn a six figure income, and extinguish marital debts

that were for his benefit or created by him. Wife has recently obtained work at $7.71 per hour as a day care worker.

In light of the absence of significant marital assets and Husband's much greater earning capacity, the trial court did not err in awarding Wife the entire proceeds from the sale of the business assets as well as the proceeds from the sale of silver and stocks.[2] In its memorandum opinion, the trial court specifically noted that "Wife's receipt of 100% of the funds held by the Clerk in the property distribution was to help with the shortage in meeting Wife's total need."

Finally, Husband asserts that the trial court erred in requiring him to pay the mortgage while Wife continued to live in the house until June 30, 2011. The hearing was held on April 5, 2011, and the trial court entered its final order on May 5, 2011. By the terms of the order, Wife was permitted to remain in the marital home until June 30, 2011 with Husband paying the mortgage. Husband takes the position on appeal that his obligation to pay the mortgage along with his other financial obligations "essentially dissipated any equity the Husband would have earned from the sale of the marital residence." Even if we accept Husband's reasoning that the value of the equity he received should be modified accordingly, we do not find that the evidence preponderates against the trial court's division of the marital estate. As stated above, the marital estate contained no significant assets and Husband's earning capacity and access to resources far exceeded Wife's.

*Alimony*

Husband argues that the trial court erred in awarding too much alimony to Wife. The trial court awarded Wife $1,700 per month for 96 months in rehabilitative alimony, specifically providing that this award was not to be considered alimony in solido and that the court retained jurisdiction to make modifications during the given time period. Further, Husband must continue to provide Wife with health insurance until she qualifies for insurance through her employer or the end of the COBRA coverage period, whichever comes first. Husband's obligation regarding Wife's health insurance "shall not exceed thirty-six months after the COBRA coverage begins."

---

[2]In his brief, Husband refers to his "personal silver collection," a term that might suggest that these were his separate assets. There is nothing in the record to show that Husband ever argued that the silver should be classified as his separate asset. Throughout the proceedings below, the trial court implicitly treated the escrowed funds as marital property since they were to be subject to later division. At the hearing, Husband requested half of the total funds on deposit with the court clerk.

A trial court has broad discretion to determine the need for spousal support, as well as the appropriate nature, amount, and duration of that support. Tenn. Code Ann. § 36-5-121; *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). An award of spousal support will not be disturbed on appeal absent an abuse of the trial court's discretion. *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Under the abuse of discretion standard, a reviewing court cannot substitute its judgment for the trial court's judgment. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). Rather, a reviewing court will find an abuse of discretion only if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga–Hamilton County Hosp. Auth.,* 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher,* 312 S.W.3d 515, 524 (Tenn. 2010). Therefore, "when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011).

In *Gonsewski*, our Supreme Court recognized the principle that "a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors." *Id.* at 105 (footnote omitted). Decisions regarding the nature and amount of spousal support hinge upon the unique facts of each case and require careful consideration of the factors found at Tenn. Code Ann. § 36-5-121(i). *Oakes v. Oakes*, 235 S.W.3d 152, 160 (Tenn. Ct. App. 2007). Tenn. Code Ann. § 36-5-121(i) instructs the court to consider all relevant factors in determining whether spousal support is appropriate and in determining the nature, amount, length of term, and manner of payment, including the following:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
>
> (3) The duration of the marriage;
>
> (4) The age and mental condition of each party;
>
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The single most important consideration for the court in awarding alimony is the need of the disadvantaged spouse seeking support, followed by the ability of the obligor spouse to pay support. *Bratton*, 136 S.W.3d at 604; *Oakes*, 235 S.W.3d at 160.

Husband points out several discrepancies in Wife's statement of income and need. We agree that, in light of the fact that the court ordered the Husband to assume the debt on the marital home, Wife's statement should not include the second mortgage or the homeowner dues. Nevertheless, Wife must still pay for housing, and the court implicitly accepted her affidavit's figure of $1,200 for rent or mortgage as well as her estimate of $1,000 for food. Wife testified that the Honda car insurance was $264 a month, and the court implicitly credited that testimony. Moreover, Husband fails to take into account the cost of Wife's education to become a radiology technician, which will cost approximately $10,000. Subtracting the extra housing debts and adding $100 a month for Wife's educational expenses results in a new expense figure of approximately $5,000 a month. Subtracting child support and Wife's income from total expenses yields need in the amount of $2,742 a month, only about $130 a month less than the figure used by the trial court.

-10-

Husband also argues that he does not have the ability to pay $1,700 per month. After reviewing the relevant figures, we are inclined to agree. The trial court accepted Husband's statement of monthly expenses with the exception of subtracting the $700 in child support paid for Husband's out-of-wedlock child. The court emphasized that Husband received a credit on his child support obligation for the parties' children as a result of this existing obligation. Nevertheless, the $700 expense must still be paid. Thus, Husband's total expenses are $4,781.00. He must also pay child support on the children of this marriage in the amount of $1,566 as well as COBRA payments on Wife. Husband's net income is $7,376.00. This leaves Husband with $1,029 per month less COBRA payments.[3]

Based upon the evidence in the record, we conclude that the trial court erred in ordering Husband to pay Wife rehabilitative alimony in the amount of $1,700 a month as he does not have the ability to pay that amount. We find no error, however, in the trial court's award to Wife of the approximately $20,000 held by the court clerk as a means of making up for the shortage in meeting Wife's needs. On remand, the trial court must determine the monthly amount Husband is able to pay taking into account COBRA payments and his child support obligation.[4]

*Parenting time*

Husband argues that the trial court erred in failing to award him adequate parenting time. We agree.

Because "'the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge,'" we review issues of parenting time and primary residential parent status for abuse of discretion. *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001) (*quoting Suttles v. Suttles,* 748 S.W.2d 427, 429 (Tenn. 1998)). "[A]ppellate courts will decline to disturb a parenting plan fashioned by a trial court unless that decision is based on application of an incorrect legal standard, is against logic or reasoning, or is not supported by a preponderance of the evidence." *Cummings v. Cummings,* No. M2003-00086-COA-R3-CV, 2004 WL 2346000, at *5 (Tenn. Ct. App. Oct. 15, 2004).[5]

---

[3]While Husband asserts in his brief that the monthly COBRA payments will be between $348 and $510 a month, we find nothing in the record to substantiate these figures.

[4]Once Husband's obligation to make COBRA payments ends, his monthly alimony payment could increase by the amount of the COBRA payment.

[5]At oral argument, Husband cited a new statute amending Tenn. Code Ann. § 36-6-106(a) to require that, in considering the best interest of the child(ren), "the court shall order a custody arrangement that
(continued...)

Both parties in this case submitted proposed parenting plans to the court at the hearing. Husband asked that he have 74 days of parenting time, and Wife requested that Husband have 69 days of parenting time. While expressing a preference for Husband's parenting plan and agreeing with Husband that a specific parenting schedule needed to be ordered (rather than just left to the agreement of the parties, as Wife suggested), the trial court ordered that Husband have only 28 days a year in parenting time. In its ruling from the bench, the court made the following comments:

> Again, girls 17 and 14, both parties, thankfully, have encouraged their Christian following, their involvement in going to church camps and mission trips, just the things you really like to hear parents doing for their children. I looked at the distance between the parties and I also looked at the father's past performance in not being readily available or seeing the girls, and I heard him say he was waiting for some sort of orders, but those are his girls and I wasn't pleased with any downtime of contact with the children, but that's all right.

The court then gave Husband two weeks in the summer along with other vacation and holiday time and stated that the parties could agree to additional time.

We conclude that the trial court erred in limiting Husband to 28 days a year in parenting time. There were no allegations of parental misconduct, and Wife petitioned for Husband to have 69 days a year. While it is appropriate for the children to attend camps and go on mission trips, the children should also be given the opportunity to have a meaningful relationship with their father. On remand, the trial court shall determine a parenting schedule that will allow Husband to have more parenting time with the children, starting with Wife's proposed plan as a reasonable amount. This decision will also require a recalculation of child support based upon Husband's increased parenting time.

*Discretionary costs*

Husband argues that the trial court erred in awarding Wife discretionary costs in the amount of $2,019 for the fees of Rob Jennings. We agree with Husband's position.

The decision to award discretionary costs is reviewed under the abuse of discretion standard. *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 215 (Tenn. Ct. App. 2008).

---

[5](...continued)
permits both parents to enjoy the maximum participation possible in the life of the child" consistent with all of the statutory factors. 2011 Tenn. Pub. Acts ch. 433. This statute did not take effect until June 6, 2011, and the final order in this case was issued in May 2011. Thus, the new statute does not apply here.

Rule 54.04(2) of the Tennessee Rules of Civil Procedure allows a court to award discretionary costs, including "reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials." This provision allows for recovery of expert witness fees for deposition or trial, not for preparation for deposition or trial. *Trundle v. Park*, 210 S.W.3d 575, 582-83 (Tenn. Ct. App. 2006); *Chaffin v. Ellis*, 211 S.W.3d 264, 293 (Tenn. Ct. App. 2006). The party seeking discretionary costs has the burden of convincing the trial court that he or she is entitled to the costs. *Duran*, 271 S.W.3d at 215.

In this case, Wife submitted an invoice from Jennings for "assistance with Hattaway case to date." Jennings did not testify at trial. At oral argument, counsel for Wife stated that Jennings was an accountant hired to value the family medical practice and did not testify. Under these circumstances, the trial court erred in awarding Wife discretionary costs for Jennings's fees.

*Attorney fees*

Husband's final argument is that the trial court erred in awarding Wife her attorney fees in the amount of $17,000.00. He asserts that he does not have the ability to pay the amount awarded.

An award of attorney fees in a divorce case is generally characterized as alimony in solido. *Owens v. Owens*, 241 S.W.3d 478, 495 (Tenn. Ct. App. 2007). Thus, in considering a request for attorney fees, a trial court must consider all of the factors contained in Tenn.Code Ann. § 36-5-121(i). A trial court ordinarily "will award attorney's fees as alimony when an economically disadvantaged spouse would otherwise be forced to deplete assets in order to pay attorney's fees." *Id.* at 496. Decisions to award attorney fees are reviewed under an abuse of discretion standard. *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001).

In awarding Wife her attorney fees in this case, the trial court stated that this award was "[b]ased upon Husband[']s actions for causing the divorce, causing unnecessary fees to obtain and enforce support, Husband[']s earning ability and capacity to earn compared to that of the Wife, [and] Wife having insufficient assets to pay." These are all factors properly considered by the court under Tenn. Code Ann. § 36-5-121(i). Viewing the record as a whole, we cannot say that the trial court abused its discretion in awarding Wife her attorney fees.

CONCLUSION

The trial court's award of rehabilitative alimony in the amount of $1,700 per month is vacated and the matter remanded for an award affordable by Husband taking into account the required COBRA payment and Husband's child support obligations. The trial court's award of only 28 days of parenting time is vacated and the matter remanded for determination of a parenting schedule allowing Husband 69 days of parenting time and a recalculation of child support. The trial court's award of discretionary costs for the services of Wife's expert is reversed. In all other respect, the trial court's decision is affirmed. We decline Wife's request for an award of attorney fees on appeal; costs are assessed equally to both parties, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE